**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTINE LUTZ, Derivatively on Behalf of GROUPON, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | |
| ) | |
| ANDREW D. MASON, PETER J. ) | |
| BARRIS, KEVIN J. EFRUSY, MELLODY ) | JURY TRIAL DEMANDED |
| HOBSON, BRADLEY A. KEYWELL, ) | |
| ERIC P. LEFKOFSKY, THEODORE J. ) | |
| LEONSIS and HOWARD SCHULTZ, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| GROUPON, INC., ) | |
| ) | |
| Nominal Defendant. ) | |

## SHAREHOLDER DERIVATIVE COMPLAINT

For Plaintiff Christine Lutz's ("Plaintiff") Shareholder Derivative Complaint, Plaintiff alleges the following upon personal knowledge as to herself and upon information and belief as to all other allegations, based upon her attorneys' investigation of information pertinent to the claims herein alleged, including reviewing United States Securities and Exchange Commission ("SEC") filings, newspaper articles, and other publicly available documents:

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought pursuant to Federal Rule of Civil Procedure 23.1 on behalf of nominal defendant Groupon, Inc. ("Groupon" or the "Company"), against the members of the Company's Board of Directors (the "Board"), including Andrew D. Mason ("Mason"), Peter J. Barris ("Barris"), Kevin J. Efrusy ("Efrusy"), Mellody Hobson

("Hobson"), Bradley A. Keywell ("Keywell"), Eric P. Lefkofsky ("Lefkofsky"), Theodore J. Leonis ("Leonis"), and Howard Schultz ("Schultz") (collectively, the "Director Defendants").

2.     On June 1, 2011, the Company filed its first Form S-1 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement was amended several times prior to Groupon's initial public offering ("IPO") on November 3, 2011, because the Registration Statement contained material misrepresentations regarding the Company's financial position, as well as its accounting methodologies and metrics.

3.     Groupon's IPO took place on November 3, 2011, and it sold 35,000,000 shares at $20 per share, producing net proceeds of $658,000,000.

4.     Groupon issued a press release on February 8, 2012, announcing its financial results for the fourth quarter and full year 2011.  However, on March 30, 2012, Groupon issued a press release, which was attached to a Form 8-K/A filed with the SEC, announcing a revision to the financial results announced on February 8.  The press release revealed that revenue for the fourth quarter of 2011 needed to be reduced by $14.3 million, and noted an increase in operating expenses and reductions in net income, operating income, and earnings per share.  According to the press release, "In conjunction with the completion of the audit of Groupon's financial statements for the year ended December 31, 2011 by its independent auditor, Ernst & Young LLP, the Company included a statement of *a material weakness in its internal controls over its financial statement close process* in its Annual Report on Form 10-K for year ended December 31, 2011."  (Emphasis added).

5.     On the first day of trading following the March 30 press release, Groupon's stock dropped seventeen percent.  Moreover, shortly thereafter, the SEC announced a preliminary investigation into the Company's accounting problems.

6.     As a result of the revision announced on March 30, the Company has and will continue to suffer significant damage.  The Director Defendants were fully aware and on notice of the Company's numerous accounting deficiencies, its susceptibility to revenue recognition problems given the inadequate controls in place, and the harm that the Company and its shareholders could suffer as a result of these material weaknesses.

7.     At all times, the Director Defendants were aware that the Company, in becoming a publicly traded corporation, would be required to conform to certain accounting standards regarding its refund recognition and that failure to conform could produce misleading and inflated revenue results and wrongfully induce investors to purchase the stock.  Nevertheless, the Director Defendants willfully disregarded these issues and permitted the Company to function without sufficient internal controls.  As a result of these deficiencies, the Company reported inaccurate financials, was forced to revise them, and has been exposed to significant harm.

8.     As discussed herein, the Director Defendants failed to properly implement, oversee, and maintain sufficient internal controls, practices, and procedures for the Company to ensure compliance with federal law, Generally Accepted Accounting Procedures ("GAAP"), and Generally Accepted Accounting Standards ("GAAS").

9.     Because of the Director Defendants' failure to comply with their fiduciary duties, Groupon has suffered from the misappropriation and misuse of proprietary, non-public and material corporate inside information concerning its inflated financials and misleading IPO-related filings, including the Registration Statement, which caused the value of the Company's revenue and financial results to be materially overstated.

10.     Moreover, the Director Defendants' wrongdoing has caused Groupon to revise its financial results for fourth quarter and year ended December 31, 2011, and has exposed the

Company to potential liability in the form of SEC investigations, as well as other losses and damages, including irreparable damage to Groupon's reputation and goodwill. As a result of the Director Defendants' breaches of their fiduciary duties, gross negligence, and/or reckless disregard, Groupon has suffered and will continue to suffer substantial harm.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and defendants are citizens of different states and the matter in controversy exceeds the jurisdictional amount of $75,000 exclusive of interest and costs. Moreover, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

12.     Venue is proper in this Court because Groupon is headquartered in this District and a substantial portion of the occurrences complained of herein occurred in this District. In addition, one or more of the defendants either resides in or maintains offices in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in the District.

## PARTIES

13.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Groupon common stock. Plaintiff is a citizen of North Carolina

14.     Defendant Groupon is a Delaware corporation and maintains its principal executive offices at 600 West Chicago Avenue, Suite 620, Chicago, Illinois 60610. The Company, founded in 2008, together with its subsidiaries, operates as a local commerce marketplace that connects merchants to consumers by offering goods and services at a discount in North America and internationally. The Company sends daily e-mails to its subscribers regarding discounted offers for goods and services that are targeted by location and personal

preferences. Consumers also access its deals directly through the Company's websites and mobile applications. Groupon's common stock is traded on the Nasdaq under the ticker symbol "GRPN."

15. Defendant Mason is a co-founder of the Company and has served as a Groupon director and as Chief Executive Officer ("CEO") since the Company's inception. Upon information and belief, Mason is a citizen of Illinois.

16. Defendant Barris has served as a Groupon director since January 2008. According to the Company's website, Barris is Chair of the Company's Compensation Committee and is a member of the Audit Committee and Nominating and Governance Committee. Upon information and belief, Barris is a citizen of California.

17. Defendant Efrusy has served as a Groupon director since November 2009. According to the Company's website, Efrusy is a member of the Company's Audit Committee and Compensation Committee. Upon information and belief, Efrusy is a citizen of California.

18. Defendant Hobson has served as a Groupon director since June 2011. According to the Company's website, Hobson is a member of the Company's Compensation Committee and Nominating and Governance Committee. Upon information and belief, Hobson is a citizen of Illinois.

19. Defendant Keywell is a co-founder of the Company and has served as a Groupon director since the Company's inception. According to the Company's website, Keywell is Chair of the Company's Nominating and Governance Committee and is a member of the Compensation Committee. Upon information and belief, Keywell is a citizen of California.

20. Defendant Lefkofsky is a co-founder of the Company and has served as a Groupon director and as Executive Chairman of the Board since the Company's inception. Upon

information and belief, Lefkofsky is a citizen of Florida.

21.     Defendant Leonsis has served as a Groupon director since June 2009 and as Vice Chairman of the Board since April 2011.  According to the Company's website, Leonsis is Chair of the Company's Audit Committee and is a member of the Compensation Committee.  Upon information and belief, Leonsis is a citizen of Virginia.

22.     Defendant Schultz has served as a Groupon director since February 2011.  Upon information and belief, Schultz is a citizen of Washington.

23.     The defendants identified in paragraphs 15 through 22 are collectively referred to herein as the previously defined "Director Defendants."

## DEFENDANTS' FIDUCIARY DUTIES

24.     By reason of their positions as directors, officers, and/or fiduciaries of Groupon and because of their ability to control the business, corporate and financial affairs of the Company, each of the Director Defendants owed Groupon the duty to exercise due care and diligence in the management and administration of the affairs of the Company and owed the duty of loyalty, including full and candid disclosure of all material facts related thereto.  Moreover, the Director Defendants owed a duty to Groupon to ensure that it operated in compliance with all applicable federal and state laws, rules, and regulations, and that Groupon was not engaged in any unsafe, unsound, or illegal business practices.  The conduct of the Director Defendants complained of herein involves knowing violations of their duties as directors of Groupon, which the Director Defendants were aware of or recklessly disregarded.  Moreover, the Director Defendants were aware of the risk of serious injury to the Company.

25.     To discharge these duties, the Director Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and

financial and corporate affairs of Groupon.  By virtue of this obligation of ordinary care and diligence, the Director Defendants were required, among other things, to: (i) manage, conduct, supervise, and direct the employees, businesses and affairs of Groupon, in accordance with laws, rules and regulations, and the charter and by-laws of Groupon; (ii) neither violate nor knowingly or recklessly permit any officer, director or employee of Groupon to violate applicable laws, rules and regulations, and to exercise reasonable control and supervision over such officers and employees and ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by Groupon; (iii) remain informed as to how Groupon was operating, and upon receiving notice or information of unsafe, imprudent or unsound practices, to make reasonable investigation in connection therewith and to take steps to correct that condition or practice, including, but not limited to, maintaining and implementing an adequate system of financial controls to gather and report information internally, to allow the Director Defendants to perform their oversight function properly to prevent the use of non-public corporate information for personal profit; (iv) supervise the preparation, filing and/or dissemination of any SEC filing, press releases, audits, reports or other information disseminated by Groupon and to examine and evaluate any reports of examinations or investigations concerning the practices, products or conduct of officers of Groupon and to make full and accurate disclosure of all material facts, concerning *inter alia*, each of the subjects and duties set forth herein; and (v) preserve and enhance Groupon's reputation as a public corporation and to maintain public trust and confidence in Groupon as a prudently managed entity fully capable of meeting its duties and obligations.

26.    The Director Defendants breached their duties of loyalty and good faith by causing the Company to misrepresent its financial condition, as detailed herein, and by failing to

prevent the Director Defendants from taking such illegal actions. In addition, because of these illegal actions and course of conduct during the relevant period, the Company is now the subject of several class action lawsuits that allege violations of federal securities laws and an SEC investigation. As a result, Groupon has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to: (i) costs associated with coordinating with any SEC investigation and potential fines, which can be imposed as a result of any SEC investigation; (ii) costs incurred to carry out internal investigations, including legal fees paid to outside counsel; (iii) costs incurred in investigating and defending Groupon and certain directors and officers in the class action lawsuits, plus potentially millions of dollars in settlements or to satisfy an adverse judgment; (iv) costs incurred in compensation and benefits paid to the Director Defendants, who breached their duties to the Company; and (v) costs from the substantial loss of market capital.

27. Moreover, these actions have irreparably damaged Groupon's corporate image and goodwill. For at least the foreseeable future, Groupon will suffer because it has been implicated in illegal behavior and has misled the investing public, such that the Company's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## SUBSTANTIVE ALLEGATIONS

28. According to its website, Groupon "features a daily deal on the best stuff to do, see, eat, and buy in 48 countries, and soon beyond." Launched in November 2008, the Company has about 10,000 employees working across its Chicago headquarters, a growing office in Palo Alto, California, local markets throughout North America, and regional offices in Europe, Latin America, Asia and around the world.

29. As mentioned, the Company filed the Registration Statement on June 2, 2011.

The Registration Statement contained an unusual non-GAAP accounting metric referred to as "adjusted consolidated segment operating income" ("ACSOI"). ACSOI excluded substantial expenses and thus would permit the Company to show positive operating income despite the fact that it was not profitable. Investors and the SEC were skeptical and critical of the use of ACSOI and claimed it was a misleading accounting metric. In response, on August 10, 2011, the Company amended its Registration Statement and eliminated the ACSOI metric.

30.     On September 23, 2011, as a result of a recalculation of its finances based on GAAP, Groupon was forced to amend the Registration Statement. Among other things, Groupon revised its revenue for the first half of 2011 by more than half, from $1.5 billion to $688 million. The sheer size of this change surprised the investing public and raised concerns with respect to whether the Company would complete the registration process and go public.

31.     That day, an article written by Michael J. De La Merced and Evelyn M. Rusli in the *New York Times Dealbook* stated, in relevant part:

> Groupon disclosed a major accounting change on Friday, essentially halving its once-jaw-dropping revenue after it encountered resistance from regulators with its filing to go public.
>
> Groupon, the online coupon titan, announced separately that its chief operating officer of about five months, Margo Georgiadis, had stepped down.
>
> The changes in the revised filing and the executive departure are likely to spur additional questions about Groupon, a much-envied rising star in the constellation of new Internet companies. The company has grown rapidly, but its ability to sustain that growth, the ways it measures growth and the eccentric public persona of its chief executive have come under fire at times.
>
> Despite those criticisms, and the current turmoil in the stock market, Groupon is still aiming to go public next month, people briefed on the matter have said. That offering could value Groupon at more than $15 billion.

32.     Even though there was negative reaction to the substantial revision in the Company's revenues and criticism from regulators, Groupon went public in November 2011. In

a November 3, 2011 press release announcing the pricing of the IPO, the Company stated:

> Groupon, Inc. today announced the initial public offering of 35,000,000 shares of its Class A common stock at a price of $20 per share. In addition, Groupon has granted the underwriters a 30-day option to purchase up to an additional 5,250,000 shares of Class A common stock to cover over-allotments, if any. All of the shares of Class A common stock are being offered by Groupon. The company's shares are expected to begin trading on The NASDAQ Global Select Market on November 4, 2011 under the ticker symbol "GRPN."

33.     On November 7, 2011, the Company filed a prospectus on Form 424(B)(4) (the "Prospectus") in connection with its IPO, which was included in the Registration Statement. Among other things, the Prospectus stated that certain key financial data, including the summary consolidated statements of operations data for periods ending September 30, 2010 and 2011, as well as the balance sheet data as of September 30, 2011, were derived from unaudited consolidated financial statements.  The Prospectus stated, in relevant part:

> The summary consolidated statements of operations data for the periods ended September 30, 2010 and 2011 and the balance sheet data as of September 30, 2011 have been derived from our unaudited consolidated financials statements included elsewhere in this prospectus. The unaudited information was prepared on a basis consistent with that used to prepare our audited financial statements and includes all adjustments, consisting of normal and recurring items, that we consider necessary for a fair presentation of the unaudited period.

34.     Despite the amendments to the Registration Statement, the information set forth below was inaccurate and not presented in accordance with GAAP and sound accounting.  If the Company followed the appropriate auditing procedures, implemented the proper accounting controls and prepared its financials in accordance with GAAP, the Company would not have been forced to revise its financials and suffer the resulting damage.  The Director Defendants failed to ensure that, prior to the IPO, the Company was in full compliance with GAAP and had implemented the proper accounting controls.  This failure exposed the Company to potential liability from investors, who believed the Director Defendants had implemented the proper

accounting controls following the September 23, 2011 revision.

35.     On February 8, 2012, Groupon issued a press release wherein it announced its fourth quarter and full year 2011 financial results.  For the fourth quarter of 2011, the Company reported a net loss of $42.7 million, or ($0.08) diluted earnings per share ("EPS"), and revenue of $506.5 million.  Additionally, for fiscal year 2011, Groupon reported a net loss of $350.8 million, or ($0.97) diluted EPS, and revenue of $1.6 billion.  The Company also issued first quarter 2012 guidance, which forecasted income between $15 million and $35 million with revenue between $510 million and $550 million.

36.     Following the announcement of Groupon's financial results, the Company's stock fell to $21.17 per share.  The stock was still trading above the IPO price at this time, but only because Groupon's improper accounting practices and artificially inflated financial results had not yet been revealed.

37.     After the market closed on March 30, 2012, Groupon issued a press release announcing the restatements of the Company's recently published financial results.  Groupon's revenue for the fourth quarter of 2011 was reduced by $14.3 million after initially reporting revenue of $506.5 million.  Accordingly, Groupon's operating income decreased by $30 million, net income fell by $22.6 million, and EPS dropped by $0.04.  The Company stated the restatements were the result of a shift in the fourth quarter deal mix and higher price point offers, which then caused higher refund rates.

38.     The March 30 press release stated, in relevant part:

CHICAGO--(BUSINESS WIRE)--Groupon, Inc. (NASDAQ: GRPN) today announced a revision of its reported financial results for its fourth quarter and year ended December 31, 2011. Groupon also affirmed its guidance for the first quarter of 2012.

The revisions resulted in a reduction to fourth quarter 2011 revenue of $14.3

million. The revisions also resulted in an increase to fourth quarter operating expenses that reduced operating income by $30.0 million, net income by $22.6 million, and earnings per share by $0.04. Financial results for prior periods, including as of and for the nine months ended September 30, 2011, were not affected by the revisions.

There is no change to Groupon's previously reported operating cash flow of $169.1 million for the fourth quarter 2011 and $290.5 million for the full year 2011. There is also no change to Groupon's previously reported free cash flow, which is a non-GAAP financial measure that reflects cash flow from operations less purchases of property and equipment, of $155.1 million for the fourth quarter 2011 and $246.6 million for the full year 2011.

The revisions are primarily related to an increase to the Company's refund reserve accrual to reflect a shift in the Company's fourth quarter deal mix and higher price point offers, which have higher refund rates. The revisions have an impact on both revenue and cost of revenue. A more detailed explanation of the refund reserve is included in the Critical Accounting Policies and Estimates section of Groupon's Annual Report on Form 10-K for the year ended December 31, 2011, filed today with the Securities and Exchange Commission (SEC).

"We remain confident in the fundamentals of our business, as our performance continues to highlight the value that we provide to customers and merchants," said Jason Child, Groupon CFO. Groupon affirmed its guidance contained in its February 8, 2012 press release regarding expectations for first quarter 2012 revenue of $510 million to $550 million and income from operations of $15 million to $35 million. This guidance includes approximately $35 million for stock-based compensation and acquisition-related expense, and it assumes no material business acquisitions or investments and no further revisions to stock-based compensation estimates.

In conjunction with the completion of the audit of Groupon's financial statements for the year ended December 31, 2011 by its independent auditor, Ernst & Young LLP, the Company included a statement of a material weakness in its internal controls over its financial statement close process in its Annual Report on Form 10-K for year ended December 31, 2011. The Company has been working for several months with another global accounting firm in preparation for reporting on the effectiveness of its internal controls by the end of 2012, as required following Groupon's initial public offering last year. The Company continues to implement process improvement initiatives and augment its staffing, and is expanding the accounting firm's engagement scope to address the underlying causes of the material weakness. Further discussion of the material weakness can be found in the Company's Form 10-K, filed today with the SEC.

39.     The conduct of Groupon, admitted to above, is a violation of FASB Financial

Accounting Standard 48, which governs the manner in which a Company can estimate revenue

for refundable products.  Groupon was unable to estimate the refunds that it would need to make

reserves for and, as a result, the Company was required to not recognize revenue until the given

refund period had passed.  The Company, however, failed to fulfill this requirement and, thus,

produced inflated revenue figures because the Company did not properly account for the refund

reserves.

40.     Moreover, the restatement affirmed that, despite being informed of the

Company's material weaknesses in its accounting controls, the Director Defendants opted to

push ahead with the IPO without implementing the proper controls and conforming with GAAP

measures.  Such failure has caused and will cause the Company to suffer material harm in the

form of, among other things, civil liability, SEC fines, and loss of investor confidence.

41.     A March 30, 2012 article on *Seeking Alpha*, titled "Brace For More Surprises:

Groupon Restates Earnings, Reveals Weakness in Financial Controls," stated:

> After traders packed up for the weekend, Groupon (GRPN) issued two warnings
> during the evening of March 30th.
>
> First, Groupon discovered it under-estimated its refund rate for the previous
> quarter. As a result, the company revised downward its revenue and earnings
> numbers:
>
> "The revisions resulted in a reduction to fourth quarter 2011 revenue of $14.3
> million. The revisions also resulted in an increase to fourth quarter operating
> expenses that reduced operating income by $30.0 million, net income by $22.6
> million, and earnings per share by $0.04."
>
> This means GRPN actually had a greater loss for the last quarter. GRPN claims in
> its 10K filing released in parallel with the restatement that it has fixed its refund
> model to include a change in deal mix and higher priced offers. GRPN does not
> indicate whether these shifts represent a one-time change or an on-going, dynamic
> change. GRPN is holding firm on its guidance for the current quarter, so the
> company is implying the shift could be temporary and/or seasonal/cyclical. It is of
> course possible GRPN got blindsided with a higher number of low-quality
> merchants. For now, I expect overall refund rates to trend upward, and I expect

analysts to ask a lot of questions about this during the next conference call. Refund dynamics will get the spotlight as a source of potential uncertainty in GRPN's revenues and profits.

Second, GRPN warned that it "..identified a material weakness in [its] internal control over financial reporting which could, if not remediated, result in material misstatements in our financial statements." The details are included in the company's 10K filing. GRPN is now expanding the scope of a review of its internal controls mandated by its IPO filing so that it can understand the source of the weakness and fix it. The 10K makes it clear that the conclusion of this review could uncover more financial surprises at an as yet undetermined time:

"Although we plan to complete this remediation process as quickly as possible, we cannot at this time estimate how long it will take, and our initiatives may not prove to be successful in remediating this material weakness. If our remedial measures are insufficient to address the material weakness, or if additional material weaknesses or significant deficiencies in our internal control over financial reporting are discovered or occur in the future, our consolidated financial statements may contain material misstatements and we could be required to restate our financial results."

Until this issue is resolved, the implied risk premium for GRPN grows larger. GRPN's stock dropped as much as 10% in after-hours trading. Curiously, GRPN's stock rallied into these revelations.

42.    Moreover, a March 30, 2012 article written by Richard Waters in *The Financial Times* stated:

Groupon has revealed an accounting restatement that had the effect of wiping out its operating profit for the final months of last year, extending the series of financial hiccups that have bedevilled the fast-growing online coupons company.

The news late on Friday included an admission of "material weakness" in its internal controls and comes just six months after its initial public offering. It triggered a 7 per cent drop in its shares in after-hours trading.
Groupon blamed the restatement on its failure to account properly for its move into new markets where there is a higher chance that consumers will demand a refund.

Customers who buy coupons that give a discount on high-value services, such as laser eye surgery or hair removal, are more likely to ask for their money back, according to the company, forcing it to withhold more of its money in a refund reserve. The expansion into higher-risk categories like this only took place late last year, Groupon said, leading to a restatement just of the final quarter's figures.

The accounting change reduced the company's reported operating income for the period by $30m – more than wiping out the $15m it had previously reported for the period. It had less impact on revenues, shaving $14.3m from the $506m that had been reported before.

The admission of the latest error follows accounting changes Groupon was forced to make as it was preparing for its initial public offering last year. These included a restatement of the way it calculates revenues, as well as an agreement to de-emphasise its preferred measure for profits, known as "adjusted consolidated segmental operating income", after criticism from the SEC.

Groupon said the accounting change would not affect the cash flow it had reported previously. It also affirmed earnings guidance it had already given for the current quarter.

43.     News stories reflected the market's reaction, which, on the news of the restatement, drove Groupon's stock price down $3.10 per share to close at $15.28 per share on April 2, 2012, and a decline of seventeen percent on volume of 10 million shares.

44.     Moreover, on April 3, 2012 article in the *Wall Street Journal* titled "SEC Probes Groupon" reported that the SEC was "examining Groupon Inc.'s revision of its first set of financial results as a public company, according to a person familiar with the situation."

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

45.     Plaintiff brings this action derivatively in the right and for the benefit of Groupon to redress injuries suffered, and to be suffered, by Groupon as a direct result of the Director Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, unjust enrichment and violations of federal securities laws.  Groupon is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

46.     Plaintiff will adequately and fairly represent the interests of Groupon in enforcing and prosecuting its rights.

47.     Making a pre-suit demand on the Groupon Board would be futile, and therefore,

is excused. Despite knowing that the Company's accounting and internal controls were questioned and speculated about during the IPO process and that a lack of accounting controls would cause substantial harm to the Company, the Director Defendants permitted the Company to function without the proper controls during and following the IPO process and, accordingly, breached their fiduciary duties. As a result of this failure, the Director Defendants face a substantial threat of liability for their breaches of fiduciary duties, which renders them unable and unfit to objectively evaluate the basis for a pre-suit demand. Thus, demand on the Board would be futile and is excused.

48. The following eight Director Defendants constitute the Groupon Board: Mason, Barris, Efrusy, Hobson, Keywell, Lefkofsky, Leonsis, and Schultz. The Director Defendants did not exercise the reasonably appropriate oversight over the Company's internal controls for accounting.

49. Defendant Mason is a co-founder of Groupon and is also employed as the CEO and a director of the Company. As a result, he derives substantial and primary income from his professional relationship with Groupon. Nevertheless, in the time prior to, during and following the IPO, Mason permitted the Company to function without the proper and appropriate internal controls even though he had undeniable knowledge of the following: (i) once the IPO process had begun, the Company would be required to comply with certain accounting rules and regulations; (ii) as a result of going public, the Company would need to implement new financial controls; (iii) prior to the IPO, there was skepticism in the market concerning the accuracy of the Company's financial disclosures and results; and (iv) the Company's accounting and financial controls were in need of significant oversight because of changes needed and skepticism in the market. Mason, however, failed to take any action to implement the proper controls, which

16

would prevent inflated financials. Instead, Mason opted for inaction in the face of overt risk and because of that risk, Groupon has been seriously harmed. As a result, demand on Mason is futile.

50.     Defendant Lefkofsky is a co-founder of Groupon and the Executive Chairman of the Board. As a result, he derives substantial income from his professional relationship with Groupon. Nevertheless, in the time prior to, during and following the IPO, Lefkofsky permitted the Company to function without the proper and appropriate internal controls even though he had undeniable knowledge of the following: (i) once the IPO process had begun, the Company would be required to comply with certain accounting rules and regulations; (ii) as a result of going public, the Company would need to implement new financial controls; (iii) prior to the IPO, there was skepticism in the market concerning the accuracy of the Company's financial disclosures and results; and (iv) the Company's accounting and financial controls were in need of significant oversight because of changes needed and skepticism in the market. Lefkofsky, however, failed to take any action to implement the proper controls, which would prevent inflated financials. Instead, Lefkofsky opted for inaction in the face of overt risk and because of that risk, Groupon has been seriously harmed. As a result, demand on Lefkofsky is futile.

51.     Defendants Keywell, Mason, and Lefkofsky are the founders of Groupon and the controlling shareholders, who collectively hold over 57% of the Company's voting power. Individually and collectively, these defendants, by their positions as controlling shareholders, have profited from the Company's improper accounting procedures and continue to do so. As a result, they suffer from a conflict of interest with the unaffiliated minority shareholders and the Company itself, and, therefore, demand on defendants Mason, Lefkofsky and Keywell is futile.

52.     Defendants Leonsis, Efrusy and Schultz constitute the Company's Audit

Committee.  The Audit Committee is responsible for the oversight of the regulatory reporting process, internal compliance audits and reviews of management's reports of financial misconduct by employees, officers or directors.  Despite these responsibilities, the Audit Committee failed to implement sufficient processes and controls for managing the business and financial risks.  By such inaction and knowing disregard, defendants Leonsis, Efrusy and Schultz breached their fiduciary duties by not sufficiently monitoring the Company's business and financial risks.  As a result, any demand upon them is futile.

53.     The Company's Nominating and Governance Committee is comprised of defendants Keywell, Barris and Hobson.  According to the committee's charter, the Nominating and Governance Committee is charged with reviewing any potential conflicts of interest of any current director, assisting the Board in the development and implementation of "best practices" in order to enhance the Company's corporate governance, and assisting in monitoring compliance with the Company's current corporate governance policies.  Nevertheless, despite these responsibilities, the Nominating and Governance Committee did not implement sufficient "best practices" and failed to monitor the Company's compliance with its own corporate governance policies regarding financial reporting.  Defendants Keywell, Barris and Hobson breached their fiduciary duties by allowing the Company to operate without the proper internal controls in place, to its detriment.  Therefore, demand on defendants Keywell, Barris and Hobson would be futile.

54.     The Director Defendants have failed to investigate and take proper action against the responsible parties, including themselves, who permitted the Company to operate without the proper accounting and internal controls prior to and since the IPO.  The Director Defendants have acquiesced to and permitted the noncompliance and, therefore, the resultant breaches of

fiduciary duties have occurred. The Director Defendants have been and are unable to willingly comply with their fiduciary obligations and with the regulations required of and by the Company. Moreover, the Director Defendants are unwilling to take action against themselves. Six of the eight Director Defendants have served on the Company's Board for three years or longer and experienced substantial financial gain upon taking the Company public. As a result, they have developed professional and personal relationships, entangled financial alliances and interests, and therefore, cannot and will not vigorously prosecute any action on behalf of the Company. Therefore, demand on the Board is futile and is excused.

55. The Director Defendants' failure to implement legally sufficient accounting and internal controls caused the Company's noncompliance with internal guidelines, regulations and laws. After only five months of being a publicly-traded Company, Groupon has admitted to material weaknesses in its financial controls. Further, the Company did not clarify or affirm that the material weakness is not more extensive than initially disclosed and/or that it does materially undermine the viability and integrity of the Company's Registration Statement, Prospectus and other IPO-related filings. Upon deciding to take the Company public, the Director Defendants knew or should have known: (i) once the IPO process had begun, the Company would be required to comply with certain accounting rules and regulations; (ii) as a result of going public, the Company would need to implement new financial controls; (iii) prior to the IPO, there was skepticism in the market concerning the accuracy of the Company's financial disclosures and results; and (iv) the Company's accounting and financial controls were in need of significant oversight because of changes needed and skepticism in the market. Despite the obvious red flags, the Director Defendants intentionally and/or recklessly failed to properly oversee the Company's financial controls and reporting process. Therefore, demand on the Board is futile and is

excused.

56.     In order to prosecute an action on behalf of the Company, the Director Defendants would have to sue themselves, which would expose them and their fellow directors to potentially tens of millions of dollars in liability.  It is apparent that the Board will not go forward with the lawsuit given the consequences.  The Director Defendants are exposed to potential liability for not properly overseeing the Company and failing to implement the proper internal accounting and financial controls, which would have prevented the material misrepresentations from occurring.  Therefore, demand on the Board is futile and is excused.

57.     The Director Defendants, through their misconduct and wrongdoing, have benefitted and engaged in such conduct in order to preserve their lucrative positions and control of the Company.  As a result, defendants are incapable and unable to exercise the independent judgment necessary bring this action on behalf of the Company.  By their blatant course of conduct to date, the Director Defendants have demonstrated that they are unwilling to obtain the proper relief for the unjust enrichment received, despite the losses to the Company as a result of the adjustments to the Company's financial reports and balance sheet.  Therefore, demand on the Board is futile and is excused.

58.     Groupon has experienced and will continue to suffer significant harm and losses resulting from the wrongdoing complained of herein.  The Director Defendants, however, have not filed any lawsuits on behalf of the Company seeking relief from those responsible for the wrongful conduct.  Such a lawsuit would allow the Company to recoup some of the losses it has suffered and will suffer.  Therefore, demand on the Board is futile and is excused.

59.     Throughout the IPO process, starting with the Company's first Registration Statement, Groupon has repeatedly faced allegations and questions concerning its accounting

procedures. These concerns pressured the Director Defendants into amending the Registration Statement numerous times. As a result, the Director Defendants were aware of the accounting procedures and substantial oversight required to ensure that the Company was in compliance with the applicable rules, regulations and laws. The Director Defendants have shown complete unwillingness to fulfill and/or a reckless and knowing disregard for their fiduciary obligations by failing to institute the proper internal accounting and financial controls, as demonstrated by their inaction given the following red flags:

(a)     When the Company filed its Registration Statement on June 2, 2011, it contained an unusual and controversial non-GAAP accounting metric – ACSOI. Subsequently, Groupon was forced to amend the Registration Statement by eliminating the ACSOI metric because of pressure from the investing public claiming it was misleading.

(b)     In September 2011, the Company had to restate its financial results from the first half of 2011. The restatement resulted in a massive deduction in the Company's revenue from $1.5 billion to $688 million. The massive change in reported revenue led to questions and skepticism regarding Groupon's viability as a publicly-traded company.

(c)     In the Registration Statement, the Prospectus and numerous amendments reported therein, which were all signed by the Director Defendants, Groupon acknowledged that due its conversion into a publicly-traded company, its financial statements would be subject to a higher degree of oversight.

60.     Seven of the eight Director Defendants signed each and every version of the Registration Statement since it was originally filed on June 2, 2011. As a result, these directors could not have been unaware of the problems the Company was experiencing during the IPO process regarding its accounting controls. Undoubtedly, these Board members had notice of the

weaknesses and susceptibility of the Company's accounting controls. Further, these Board members knew that the inadequate internal controls exposed the Company to significant risk and that they failed to address the internal controls and thus did not cure the risk. As a result, these Board members breached their fiduciary duties by failing to properly monitor an area of the Company's business, which they knew was in need of oversight. Since these Board members were given numerous opportunities to and still failed to cure the deficiencies in the Company's accounting practices, demand on these members of the Board is futile and thus excused.

61.     Each member of the Groupon Board is specifically implicated by the misconduct complained of herein, as each member is either (i) a founder and controlling shareholder, or (ii) a member of the Audit Committee and/or Nominating and Governance Committee; or (c) signed the misleading IPO documents. As a result, the Board is dominated by individuals who are implicated in the wrongdoing complained of herein, and, therefore, are conflicted, which renders demand futile.

## COUNT I

### (BREACH OF FIDUCIARY DUTIES AGAINST THE DIRECTOR DEFENDANTS)

62.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

63.     Each of the Director Defendants, because of his or her positions as directors and officers of Groupon, owes and has owed fiduciary duties to the Company and its shareholders in connection with the management and operations of the Company's business and operations.

64.     The Director Defendants' conduct, individually and in concert, as set forth herein, was due to their intentional, reckless, or negligent breach of the fiduciary duties they owe to the Company.

65.     The Director Defendants, individually and in concert, breached their fiduciary duties by willfully participating in and causing the Company to unnecessarily waste corporate funds.  Further, the Director Defendants failed to properly oversee Groupon's business and affairs, the failure of which renders them personally liable to the Company.

66.     As a result of the Director Defendants' wrongful conduct and actions, Groupon has suffered and will continue to suffer significant damage.

67.     All of the Director Defendants, individually and in concert, engaged in the aforementioned conduct in breach of their fiduciary duties to the Company and conspired to, and did, abuse the control vested in them by virtue of their high-level positions in the Company.

68.     As a direct and proximate result of the Director Defendants' failure to perform their fiduciary obligations, Groupon engaged in unlawful activities causing substantial damage to the Company.

**COUNT II**

**(ABUSE OF CONTROL)**

69.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

70.     As alleged herein, the Director Defendants' misconduct, individually and in concert, constituted an abuse of their control and influence over Groupon, for which they are legally responsible.

71.     As a direct and proximate result of the Director Defendants' abuse of control, the Company has sustained significant damages.

72.     As a direct and proximate result of the Director Defendants' breaches of their fiduciary duties, the Company has suffered and will continue to suffer significant damages and

harm. As a result of the wrongdoing alleged herein, the Director Defendants are liable to Groupon.

73. By reason of the foregoing, Groupon has been damaged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A. Authorizing the maintenance of this action as a derivative action, with Plaintiff as derivative Plaintiff;

B. Declaring that the Director Defendants have violated their fiduciary duties to the Company;

C. Awarding against all of the Director Defendants and in favor of the Company the amount of damages sustained by the Company as a result of the Director Defendants' breaches of fiduciary duties;

D. Directing Groupon and the Director Defendants to take all necessary reforms to improve its corporate governance and internal procedures to comply with the applicable rules, regulations, and laws, and to protect Groupon from a repeat of the damaging events described herein, including, but not limited to, putting forth a shareholder vote on the following resolutions to amend the Company's By-Laws and Articles of Incorporation:

1. A provision that would strengthen the Board's supervision and oversight of operations and implement procedures for greater shareholder input into the policies of the Board;

2. A proposal that would ensure the implementation of effective oversight to ensure compliance with the applicable rules, regulations, and laws; and

3. A provision that would permit the shareholders of the Company to

nominate at least three (3) candidates for election to the Board.

E.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury on all claims asserted herein.

Dated: May 14, 2012

By: */s/ Marvin A. Miller*
Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400

*Attorneys for Plaintiff*

Seth D. Rigrodsky
Brian D. Long
Gina M. Serra
**RIGRODSKY & LONG, P.A.**
919 North Market Street, Suite 980
Wilmington, DE 19801
(302) 295-5310

Konstantine Kyros
George Pressly
**KYROS & PRESSLY LLP**
60 State Street, Suite 700
Boston, MA 09102
(603) 320-7030